IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Randy Drummond, ) | Case No. 8:10-cv-2423-TLW-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Jon E. Ozmint, Director of South ) | |
| Carolina Dept. of Corrections; ) | |
| Jenny Ardis, Administrative Coordinator ) | |
| of Division of Health Services, Dept. of ) | |
| Corrections; Doctor Bearden, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court on Defendants' motion for summary judgment [Doc. 28] and motion to dismiss for lack of prosecution[1] [Doc. 44]. Plaintiff is proceeding pro se and brought this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pre-trial proceedings in prisoner petitions for relief under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on September 16, 2010, alleging denial of appropriate medical care and reckless disregard of his medical conditions. [Doc. 1.] On March 2, 2011, Defendants filed a motion for summary judgment. [Doc. 28.] That same day,

---

[1] Defendants' motion to dismiss for lack of prosecution is based on Plaintiff's alleged failure to update his address with the Court. [Doc. 44 at 1.] In subsequent filings, Plaintiff advised the Court that he was in the Spartanburg County jail [Doc. 50] and, later, that he was in the Kirkland County Detention Center [Doc. 54]. Moreover, Plaintiff responded to Defendants motion to dismiss, indicating he did not wish to abandon his case. [Doc. 62.] Based on the above, the Court recommends finding as moot Defendants' motion to dismiss for lack of prosecution.

pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 29.] On April 18, 2011, Plaintiff filed a response in opposition to Defendants' motion for summary judgment [Doc. 41], and Defendants filed a reply to Plaintiff's response on the same date [Doc. 43]. Plaintiff subsequently filed another response in opposition to Defendants' motion for summary judgment on September 7, 2011.[2] [Doc. 68.] Defendants' motion is now ripe for review.

## BACKGROUND

Plaintiff, at all times relevant to the allegations in this action, was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Tyger River Correctional Institution ("TRCI").[3] [Doc. 1 at 2.] Generally, Plaintiff alleges he did not receive proper treatment for a hernia nor did he receive adequate pain medication for post-operative pain related to surgery he had before he was incarcerated or for pain associated with his hernia. [Doc. 1 at 3–4.] Plaintiff further alleges he asked the Department of Corrections to expedite surgery to relieve his pain. [*Id.* at 4–5.] Plaintiff seeks an order directing the SCDC medical providers to provide sufficient medical care, i.e., hernia surgery. [*Id.* at 5.] In the alternative, should Plaintiff complete his sentence before injunctive relief is ordered, Plaintiff seeks monetary relief in the amount of $2,000,000.00 and for all private medical bills to be paid by the Department of Corrections. [*Id.*]

---

[2]The Court notes this document was docketed as a response in opposition to the motion to dismiss for lack of prosecution; however, because Plaintiff captioned it a "response to summary judgment," the Court will consider it when addressing Defendants' motion for summary judgment as well.

[3]Plaintiff was released from custody on or about December 1, 2010. [Doc. 28-1 at 6; *see also* Doc. 19 (notice of change of address).]

2

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage."  *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may

4

fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this

standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

### **Claims for Injunctive Relief are Moot**

First, because Plaintiff is no longer incarcerated at TRCI, to the extent he is seeking injunctive and/or declaratory relief, his claims are moot. *Slade v. Hampton Roads Reg'l*

*Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding that former detainee's request for injunctive relief was moot); *Taggart v. Oklahoma*, 74 F. App'x 880, 882 (10th Cir. 2003) (holding that inmate's claims concerning his medical needs against prison officials for injunctive relief were rendered moot by his release); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 347 (6th Cir. 2001) (same).  Plaintiff's claims for monetary damages survive his release from TRCI, *see Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976), and as public officials, Defendants are all subject to suit for damages in their individual capacities in a § 1983 lawsuit, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Hafer v. Melo*, 502 U.S. 21 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).  However, for the reasons set forth below, the evidence is insufficient to create a genuine issue of fact as to whether Defendants violated Plaintiff's constitutional rights.

**Claims Against Ozmint and Ardis**

As an initial matter, only Defendant Dr. Bearden ("Bearden") is mentioned in the Complaint.  Plaintiff makes no allegations against Defendants Jon E. Ozmint ("Ozmint") and Jenny Ardis ("Ardis") in his Complaint, and Ozmint and Ardis have submitted affidavits attesting that they played no role in the events set forth in Plaintiff's Complaint.  [*See* Doc. 28-3 ¶ 4; Doc. 28-2 ¶ 7.]  While public officials are subject to monetary damages under § 1983 in their individual capacities, Defendants correctly note the doctrine of respondeat superior is not applicable in § 1983 cases.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978).  Further, even to the extent Ozmint and/or Ardis could be considered Bearden's supervisor, supervisory officials may be held liable in a §

7

1983 action only for their personal wrongdoing or supervisory actions that violated constitutional norms. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted).[4] Therefore, because Plaintiff made no allegations as to any of these elements, Ozmint and Ardis are entitled to dismissal even if the case were otherwise to proceed against Bearden.

**Deliberate Indifference Claim**

With respect to the merits of Plaintiff's deliberate indifference claim, Plaintiff has failed to present sufficient evidence to create a genuine issue of fact as to whether any named Defendant violated his constitutional rights.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference

---

[4] This is a heavy burden; in fact, the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), may have entirely abrogated supervisory liability in *Bivens* actions. *See Ashcroft*, 129 S. Ct. at 1957 (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."); *see also Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at * 2 (D.S.C. June 7, 2010). A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'" *Id.* at 1948 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)). Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions.

constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851.

Therefore, to prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind. *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)). A showing that the prison officials were merely negligent, such that the treatment constituted medical malpractice, will not establish deliberate indifference. *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.");

*Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Moreover, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under § 1983. *Estelle*, 429 U.S. at 106.

Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Assuming without deciding that Plaintiff satisfies the first prong of the analysis because his illness is a sufficiently serious medical condition, Plaintiff cannot establish Defendants acted with a sufficiently culpable state of mind, i.e., that Defendants knew of a substantial risk to Plaintiff's health or safety and consciously disregarded that risk. Accordingly, summary judgment should be granted in favor of Defendants.

The evidence produced by Defendants demonstrates Plaintiff was first seen by Bearden on April 20, 2010 when Plaintiff complained of occasional incontinence and chronic abdominal pain following a colon resection for colon cancer a year prior. [Doc. 28-4 ¶ 6; Doc. 28-6 at 5.] Bearden placed Plaintiff on Percogesic for pain and issued him

10

adult diapers. [Doc. 28-4 ¶ 6; Doc. 28-6 at 5.] Bearden saw Plaintiff again on May 4, 2010, when Plaintiff complained of swelling in his left groin area after lifting an object at work. [Doc. 28-4 ¶ 7; Doc. 28-6 at 5.] At that time, Dr. Bearden diagnosed Plaintiff with a moderate sized left inguinal hernia, continued him on Percogesic, and requested a consult with the Surgery Clinic. [Doc. 28-4 ¶ 7; Doc. 28-6 at 5.] Bearden saw Plaintiff again on June 1, 2010 regarding complaints of diffuse abdominal pain. [Doc. 28-4 ¶ 8; Doc. 28-6 at 3.] Bearden continued Plaintiff on Percogesic. [Doc. 28-4 ¶ 8.] On June 3, 2010, Plaintiff was seen in the Surgery Clinic, and the Surgery Clinic recommended Plaintiff be scheduled for surgery to repair the hernia. [*Id.* ¶ 9.] Bearden placed a request for surgery with the medical director who did not approve the request. [*Id.*; Doc. 28-6 at 3.] On August 6, 2010, Bearden saw Plaintiff again, advised Plaintiff that his surgery had been disapproved by the SCDC medical director, and noted Plaintiff's hernia was easily reducible.[5] [Doc. 28-4 ¶ 10; Doc. 28-6 at 1–2.] Bearden prescribed Naproxen for Plaintiff and continued Plaintiff on Percogesic. [Doc. 28-4 ¶ 10.] Bearden last saw Plaintiff on September 24, 2010 when Plaintiff complained of heartburn and pain from his hernia. [*Id.* ¶ 11; Doc. 26-8 at 1.] Bearden discontinued Percogesic at that time and placed Plaintiff on Tagament for heartburn. [Doc. 28-4 ¶ 11; Doc. 26-8 at 1.]

Plaintiff has failed to show that Bearden provided "treatment . . . so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. To the contrary, as stated above, Bearden saw Plaintiff on at least five occasions, sought the advice of the Surgery Center regarding

---

[5] Plaintiff states in response that SCDC surgeons tried to push his hernia back into his body cavity but the attempt failed. [Doc. 68 at 2.]

possible surgery, and sought permission to perform the surgery. Although surgery was requested by Bearden at the recommendation of the Surgery Center, Bearden opined surgery was not medically necessary to correct Plaintiff's hernia and there was no harm to Plaintiff in not having the hernia surgically repaired before release from the facility. [Doc. 28-4 ¶ 13.] Plaintiff has provided no affidavits or evidence to the contrary. Accordingly, Plaintiff cannot establish Defendants were deliberately indifferent to Plaintiff's medical needs; therefore, the Court recommends Defendants' motion for summary judgment be granted.

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity because their conduct, to the extent they acted, did not violate any clearly-established rights of which a reasonable government official would have known. The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . .

whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). District court and courts of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, Plaintiff's allegations fail to demonstrate that Defendants violated Plaintiff's constitutional rights. Therefore, the Court finds Defendants are entitled to qualified immunity.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment [Doc. 28] be GRANTED and Defendants' motion to dismiss for lack of prosecution [Doc. 44] be FOUND AS MOOT.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

October 12, 2011
Greenville, South Carolina